UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ALLEN M. MILLER,

Plaintiff,

v.

C.H. ROBINSON WORLDWIDE, INC., RONEL R. SINGH, RHEAS TRANS, INC., and KUWAR SINGH dba RT SERVICE,

Defendants.

Case No. 3:17-cv-00408-MMD-WGC

ORDER

## I. SUMMARY

In this personal injury case, the dispositive issue before the Court is whether Plaintiff Allen M. Miller's ("Miller") common law negligence claim sufficiently relates to the service Defendant C.H. Robinson Worldwide, Inc. ("Robinson") provides as a freight broker, and is thus preempted under 49 U.S.C. § 14501(c)(1), and does not fall into the exception to preemption under § 14501(c)(2)(A).[1] Robinson moves for judgment on the pleadings ("Motion") (ECF No. 59), and argues that Miller's negligence claim against it is

///

///

---

[1]Section 14501 is entitled "Federal authority over interstate transportation," but it is consistently referred to by courts and the parties here as the Federal Aviation and Administration Authorization Act ("FAAAA"). A different regulatory scheme called the Interstate Commerce Termination Act ("ICCTA") contains the same preemption provision. *Compare* 49 U.S.C. § 14501(c)(1) (the FAAAA) *with* 49 U.S.C. § 14501(b)(1) (the ICCTA). Plaintiff concedes that for the purpose of the Court's analysis, there is no difference between the two, and "case law referring to one is applicable to the other." (ECF No. 70 n.3.)

1 | preempted and does not fall into the noted exception. (*Id.*; ECF No. 75 at 11.) The Court
2 | agrees with Robinson and will therefore grant the Motion.[2]

## II. RELEVANT BACKGROUND

The relevant facts are taken from the operative complaint—Miller's First Amended Complaint ("FAC") (ECF No. 32), unless otherwise indicated.

The action concerns a motor vehicle accident that rendered Miller a quadriplegic. In early December 2016, Defendant Ronel Singh ("Singh") was operating a commercial semi-tractor trailer on eastbound I-80 in Elko, Nevada. The conditions on the road was snowy and icy, but Singh drove in an unsafe manner, causing the truck to overturn and block the westbound lanes. Miller who was driving westbound could not avoid the semi-tractor trailer and became lodged and pinned under it. Miller sustained severe injuries.

At the time of the accident, Singh was acting as Defendant Kuwar Singh dba RT Service's ("RT Service") employee. RT Service is an interstate motor carrier that, pertinently, Robinson brokered to haul a load on behalf of shipper Costco Wholesale, Inc ("Costco").

Miller brings seven claims for relief against the various Defendants. He initially asserted two of these claims against Robinson—the sixth and seventh claims. (*Id.* at 6–7.) However, in his response to the Motion, Miller consented to dismiss the sixth claim, a claim of vicarious liability. (ECF No. 70 at 1.) The remaining claim against Robinson is a state common law claim for negligence.

Miller alleges Robinson "had a duty to select a competent contractor to transport" the Costco load. (ECF No. 32 at ¶ 45.) Miller claims Robinson breached this duty by retaining RT Service to take the load. (*Id.* at ¶ 45.) He further alleges Robinson's actions or omissions in choosing RT Service "were reckless and demonstrate a conscious disregard of or indifference to the life, rights or safety of . . . Miller and others." (*Id.* at ¶

///

///

---

[2]The Court has considered the parties relevant filings, including the Motion (ECF No. 59), Miller's response (ECF No. 70) and Robinson's reply (ECF No. 75).

49.) Foundationally, Miller asserts that Robinson knew or should have known of RT Services' and Singh's incompetence because

> there were red flags about [them]. Including that [RT Services] have a history of safety violations; over 40% of [its] trucks have been deemed illegal to be on the road when stopped for random inspections; [it has] been cited numerous times for hours of service violations and false log books; and their percentage of out of service violations is twice that of the national average.

(*Id.* at ¶ 46–47.) But, it is uncontested that "RT Service was a properly authorized motor carrier with an active motor carrier registration at the time of the accident." (ECF No. 59 at 8; *see generally* ECF No. 70.)

## III. LEGAL STANDARD

"Judgment on the pleadings is proper when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Honey v. Distelarth*, 195 F.3d 531, 532, (9th Cir. 1999). A Fed. R. Civ. P. 12(c) motion for judgment on the pleadings utilizes the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted in that it may only be granted when it is clear to the court that "no relief could be granted under any set of facts that could be proven consistent with the allegations." *McGlinchy v. Shull Chem. Co.*, 845 F.2d 802 (9th Cir. 1988) (citations omitted). Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677, (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the court must accept as true the well-pleaded facts in a complaint, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper [Rule 12(b)(6)] motion. *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

3

conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).

**IV. DISCUSSION**

As indicated, the Court examines whether Miller's remaining negligence claim against Robinson is preempted under § 14501(c)(1) of the FAAAA or is saved by the exception to preemption under § 14501(c)(2)(A).

**A. Preemption Under § 14501(c)(1)**

Robinson argues that Miller's common law negligence claim directly concerns the services a freight broker provides in the transportation of property, particularly, the selection of a motor carrier to transport goods on behalf of a shipper, and is therefore preempted under the FAAAA. (ECF No. 59 at 9.) Miller responds that because his claim concerns personal injury, it is only peripherally related to Robinson's services and thus cannot amount to impermissible state regulation. (ECF No. 70 at 6–11.) The Court agrees with Robinson.

The FAAAA expressly preempts certain state regulation relating to intrastate motor carriage:

> Motor carriers of property.—
>
> (1) General Rule. Except as provided in paragraphs (2) and (3), a [s]tate . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier ... or any private motor carrier, *broker* or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1) (emphasis added). Under § 14501(c)(1) "[s]tate common law counts as an 'other provision having the force and effect of law.'" *ASARCO LLC v. England Logistics Inc.*, 71 F. Supp. 3d 990, 1004 (D. Ariz. Dec. 23, 2014) (internal quotation and citations omitted). In analyzing the provision, a court may consult air carrier preemption cases arising under the Airline Deregulation Act ("ADA") because § 14501's language closely resembles the ADA's language. *California Trucking Assoc. v. Su*, 903 F.3d 953, 960 (9th Cir. 2018).

The Court's analysis focuses on the relatedness (or connection) between the state law provision and what the FAAAA preempts—state provisions regarding "a price, route, or service of any motor carrier." 49 U.S.C. § 14501(c)(1); *ASARCO,* 71 F. Supp. 3d at 1005–06. In undertaking this analysis, the Supreme Court has determined:

> (1) that "[s]tate enforcement actions having a connection with, or reference to," carrier " 'rates, routes, or services' are pre-empted," ...; (2) that such pre-emption may occur even if a state law's effect on rates, routes, or services "is only indirect," ...; (3) that, in respect to pre-emption, it makes no difference whether a state law is "consistent" or "inconsistent" with federal regulation, ...; and (4) that pre-emption occurs at least where state laws have a "significant impact" related to Congress' deregulatory and preemption-related objectives, . . ..

*Rowe v. N.H. Motor Transp. Assoc.*, 552 U.S. 364, 370–71 (2008). But, "the FAAAA does not preempt state laws that affect a carrier's prices, routes, or services in only a tenuous, remote, or peripheral . . . manner." *California Trucking Assoc.*, 903 F.3d at 991. Thus, a court's task is centered on the particular claim (or provision) a plaintiff advances and its duty is to discern whether the claim significantly impacts a carrier's prices, routes, or services and therefore preempted, or has only a tenuous, remote, or peripheral connection to the same and thus not preempted. *Id.* at 960 (explaining the task); *ASARCO,* 71 F. Supp. 3d at 1005 (quoting *Ko v. Eva Airways Corp.*, 42 F.Supp.3d 1296, 1302 (C.D. Cal. Feb. 23, 2012)) ("[T]he Court must look to the nature of the particular claim advanced.").

In considering § 14501(c)(1)'s preemptive scope, "congressional intent is the ultimate touchstone." *California Trucking Assoc.*, 903 F.3d at 959. Specifically, a court considers whether the state provision significantly affects Congress's objectives in enacting the FAAAA. *Id.* at 960–61 (explaining Congress' objectives).

Congress's primary objective was "prevent[ing] states from undermining federal deregulation of interstate trucking through a patchwork of state regulations." *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 644 (9th Cir. 2014). The Ninth Circuit has concluded that "Congress did not intend to preempt generally applicable state transportation, safety, welfare, or business rules that *do not otherwise* regulate prices, routes or services." *Id.* (emphasis added). Instead, the impetus for the FAAAA was to prevent states "from

5

replacing market forces with their own, varied commands, like telling carriers they had to provide services not yet offered in the marketplace." *California Trucking Assoc.*, 903 F.3d at 961 (citing *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013)).

The Court finds Miller's negligence claim against Robinson is preempted under § 14501(c)(1). "A fair and commonsense construction of the term 'services', whether read broadly or narrowly with regard to a 'broker' reasonably leads to no other conclusion than that a broker must find a reliable carrier to deliver the shipment." *ASARCO,* 71 F. Supp. 3d at 1006. Holding Robinson negligent based on Miller's allegations would have a significant impact on Robinson's services as a broker and the connection with trucking is not tenuous, remote, or peripheral.

To be clear, Miller's negligence claim is not a run of the mill personal injury claim. In essence, Miller's negligence claim sets out to reshape the level of service a broker must provide in selecting a motor carrier to transport property. For example, to avoid negligence liability, a broker would consistently need to inspect each motor carrier's background to find any concerning "red flags," beyond what appears to be currently required in the marketplace. Surely, such additional inspection would result in state law being used to, at the least indirectly, regulate the provision of broker services by creating a standard of best practices, and ultimately contravening Congress's deregulatory objectives in enacting the FAAAA. *See Rowe,* 552 U.S. at 370 (noting that preemption may occur even if the state law's effect on services "is only indirect"). It is not hard to foresee the forbidden state regulatory patchwork noted in *Dilts*, if Nevada and other states begin to impose varying standards of reasonableness based on negligence claims brought against brokers in providing services. The regulatory effect would also be particularly economic, threatening to replace market forces, because, as a matter of commonsense, the level of service brokers provide directly impacts the amount brokers charge for providing their service.

///

///

///

## B. Section 14501(c)(2)(A)'s Exception to Preemption

Miller appears to alternatively argue that even if his claim is preempted under § 14501(c)(1), his claims fall within the exception to preemption under § 14501(c)(2)(A). (ECF No. 70 at 12–14.) The Court cannot agree.

Section 14501(c)(2)(A) expressly applies to state regulatory authority relative to § 14501(c)(1)'s preemption provision, providing:

> Paragraph (1)—
>
> **(A)** shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization

The Supreme Court has noted that "[i]t is the expressed intent of § 14501(c)(2)(A) that the preemption rule of § 14501(c)(1) 'not restrict' the *existing* 'safety regulatory authority of a [s]tate." *City of Columbus v. Ours Garage and Wrecker Serv., Inc.*, 536 U.S. 424, 438 (2002). The historic police powers of states govern local concerns such as "safety on municipal streets and roads." *Id.* at 440.

But, while it may be argued that Miller's negligence claim falls within Nevada's regulatory authority to police safety on its streets and roads, through the state's common law regulation of misconduct, the inclusion is tenuous at best. Further, there is no indication, either in § 14501(c)(2)(A)'s language, or cases binding on this Court, that the exception permits a private right of action—allowing for Miller to essentially do the state's work and enforce the state's police power. Thus, even though Miller essentially asserts that Robinson's negligence in selecting motor carriers creates an unreasonable safety risk on Nevada's roadways by increasing the likelihood of death or injury and is thus centered on the state's interest in maintaining safe roadways, the Court finds he cannot avail himself of § 14501(c)(2)(A)'s exception. *See City of Columbus*, 536 U.S. at 442 (suggesting a balancing between Congress's intent to further the particular deregulatory goals of § 14501(c)(1) and the specific exception under § 14501(c)(2)(A), by indicating that the

exception applies only to state/local regulatory authority: "§ 14501(c)(2)(A) shields from preemption only '*safety regulatory authority*' (and '*authority of a [s]tate* to regulate . . . with regard to minimum amounts of financial responsibility relating to insurance requirements'). *Local regulation* of prices, routes, or services of tow trucks that is *not* genuinely responsive to safety concerns garners no exemption from § 14501(c)(1)'s preemption rule") (emphasis added).

Additionally, unlike in § 14501(c)(1), § 14501(c)(2)(A)'s language is silent regarding broker services. *Compare* § 14501(c)(1) *with* § 14501(c)(2)(A). This fact further counsels against reading the exception in § 14501(c)(2)(A) to extend to broker services not clearly within Nevada's "safety regulatory authority" "with respect to motor vehicle." *Id.*

In sum, the Court grants Robinson's Motion (ECF No. 59) because the FAAAA preempts Miller's remaining common law negligence claim.

**V.  CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Robinson's motion for judgment on the pleadings (ECF No. 59) is granted.

DATED THIS 14th day of November 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE