# EXHIBIT K

CHR ID T5235076

## AGREEMENT FOR MOTOR CONTRACT CARRIER SERVICES

THIS AGREEMENT (hereinafter referred to as "the Contract") is made and entered into this 4 day of February, 2014 at Eden Prairie, Minnesota, by and between the following named parties (hereinafter referred to as "the Parties"):

C.H. Robinson Worldwide, Inc., a corporation with its principal place of business at 14701 Charlson Road, Eden Prairie, Minnesota, 55347, for itself and on behalf of its affiliated companies and divisions which are also parties to this Contract, collectively hereinafter referred to as "Robinson",

and **Kuwar Singh** dba **RT Service**, with its principal place of business at 7527 Franklin Blvd Apt 1, Sacramento, CA US 95823-3634 hereinafter referred to as "Carrier".

### W I T N E S S E T H

WHEREAS, Carrier performs motor carrier transportation services in one or more of the following forms:

(i) as a motor contract carrier duly registered with the Federal Motor Carrier Safety Administration ("FMCSA") in Docket No. MC- 852094;

(ii) as a motor carrier that solely transports cargo that is exempt from regulation by the FMCSA U.S. DOT# 2465473; or

(iii) as a motor carrier performing drayage services for intermodal shipments in good standing with the Intermodal Association of North America (IANA) and the Uniform Intermodal Interchange Agreement (UIIA); or

(iv) as a motor carrier transporting cargo in Intrastate, Interstate, Inter-Provincial/Territorial or Canada-U.S. Intra-Provincial/Territorial movements; and

WHEREAS, Robinson arranges transportation of property by motor carriers for its customers and is duly registered as a Property Broker with the FMCSA in Docket No. MC 131029 as may be amended from time to time and also facilitates the same to the extent that Carrier performs services pursuant to this Contract within, or to or from Canada; and

WHEREAS, Robinson desires to use the services of Carrier to transport property for or on behalf of its customers and Carrier desires to provide transportation services to Robinson's customers; and

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises contained herein, Carrier and Robinson agree as follows:

### 1. CONTRACT TERM AND TERMINATION

This Contract shall be effective as of the date written above and shall continue for a period of one (1) year. This Contract shall thereafter continue in effect from year to year on the same terms and conditions, unless terminated by either party. Either Party shall have the right to terminate this contract upon thirty (30) days' prior written notice to the other party.

*CHRW Carrier Agreement Ver. No. 7.2 Feb 2009*     - 2 -     *K-S*   *Carrier Representative Initial:*

CHR ID T5235076

## 2. SHIPMENTS TO BE TENDERED BY ROBINSON

Robinson hereby agrees to tender shipments to Carrier as its needs require for transportation in Interstate, Intrastate, Inter-Provincial/Territorial, Intra-Provincial/Territorial or foreign commerce, and Carrier hereby agrees to transport such shipments in accordance with the terms and conditions stated in this Contract.

## 3. INDIVIDUAL SHIPMENT COMPENSATION AND TERMS

Compensation shall be paid to Carrier solely and exclusively by Robinson, and not by Robinson's customers, on all shipments tendered to Carrier under this Contract. Carrier shall be compensated by Robinson based on the following:

a. Carrier and Robinson may orally agree upon the rate or compensation to be paid to Carrier for, and the terms and conditions applicable to, any shipment tendered by Robinson under this Contract. Robinson shall subsequently confirm the oral agreement by issuing a confirmation to Carrier in written or electronic format ("the Confirmation") that sets forth the rates, terms, and conditions agreed upon. Unless Carrier objects to the contents of the Confirmation within twenty-four (24) hours of receipt, Carrier shall be deemed to have assented to the Confirmation, which shall be binding. Each Confirmation shall be incorporated into and considered to be a part of this Contract, and the Parties agree to retain all such confirmations for at least three (3) years subsequent to the expiration of this Contract, or longer to the extent required by law. Unless the rate for any shipment is agreed to by Carrier and stated on the Confirmation, the rates and charges for the shipment shall be computed at $.80 per load mile.

b. Carrier and Robinson may agree in a separate agreement, such as Robinson's "Quick Pay Discount Agreement" set forth in Appendix A, etc. ("Discount Agreement"), to apply a discount to the rates and charges set forth in this Contract and all applicable Confirmations, which separate agreement shall be incorporated into and considered to be a part of this Contract. If the Parties agree to the Discount Agreement, the discounted amount shall be the compensation owed to Carrier for shipments covered by the Discount Agreement without additional notation on any Confirmation issued by Robinson.

c. Carrier agrees that any tariffs, circulars, pricing authorities, and/or similar documents that it publishes shall not apply to the transportation services provided by Carrier under this Contract, unless any such tariff, circular, pricing authority or similar document is expressly incorporated into this Contract or into a Confirmation.

## 4. PAYMENT OF RATES AND CHARGES

a. Within twenty (20) days after Robinson's receipt of Carrier's delivery receipt (or as otherwise provided by a Discount Agreement), Robinson shall pay Carrier the rates and charges applicable to the shipment. In exchange for Robinson's guarantee of prompt payment, and other good and valuable consideration, Carrier (i) appoints and designates Robinson as its agent for the purpose of billing and collection of freight charges and, notwithstanding subsection(7)(1) of the *Mercantile Law Amendment Act of Ontario* or any other similar legislation, Carrier waives any and all rights to claim, demand, or pursue payment from any person other than Robinson for any shipment tendered pursuant to this Contract; (ii) agrees not to contact Robinson's customers, consignors, consignees or any party other than Robinson concerning payment for transportation services; and, (iii) agrees to indemnify, defend, and hold Robinson, its customers, consignors, and consignees harmless from any claim or demand made by any subcontractor of carrier or other party for payment for transportation services related to a shipment tendered under this Contract.

CHR ID T5235076

b.  In its sole discretion, Robinson may withhold compensation owed to Carrier to satisfy claims or shortages arising out of this or other Contracts with Carrier, or to satisfy advances made to, or on behalf of, Carrier, or to satisfy any debt owed by Carrier to Robinson or any of its subsidiary or related companies, including T-Chek Systems, Inc. Robinson's right to withhold compensation shall arise only if the underlying claim or debt has not been acknowledged in writing by Carrier within thirty (30) days of presentation by Robinson, or the claim or debt has neither been paid nor denied for a valid reason within ninety (90) days of presentation. Robinson's withholding of compensation shall not allow or permit Carrier to seek payment from Robinson's customers, consignors, consignees, or any other third party, and Carrier agrees that it shall not, under any circumstances, claim, demand, or pursue payment from Robinson's Customers', consignors, consignees, or other parties for transportation services provided hereunder.

c.  Any claim for overpayment or underpayment for transportation services provided pursuant to this Contract shall be presented by the party asserting the claim to the other party within sixty (60) days of discovery of the claim, but in no event will any such claim(s) be asserted more than one hundred eighty (180) days after the delivery of the shipment or shipments giving rise to any such claim. Claims shall be supported by appropriate documentation showing the amount of the overcharge or the undercharge, as the case may be. The parties shall pay, deny, or make a firm compromise offer within forty-five (45) days of receiving a claim. Any civil action to recover overcharges or undercharges shall be instituted within eighteen (18) months of the date of delivery of the shipments comprising the overcharge or undercharge claim.

d.  Carrier will pay all licenses, fees, taxes, fuel tax payments, road tax, equipment use fees or taxes, equipment license fees, driver's license fees, tolls and any other fees and fines that may be assessed on its equipment or its operations.

## 5. CARRIER'S OPERATING AUTHORITY AND SAFETY RATING

a.  Carrier represents and warrants that all transportation performed under this Contract shall be contract carriage. To the extent that Carrier performs services pursuant to this Contract within, or to or from Canada, it shall procure and maintain any and all operating authorities or permits required to be held by Carrier under any applicable Federal, Provincial or Territorial laws and shall adhere to the Canadian National Safety Code. Without cost to Robinson, Carrier shall provide and ensure complete all preventive maintenance and ongoing maintenance including, but not limited to, periodic safety inspections, annual safety inspections and emissions testing pursuant to the standards set out in any and all of the applicable motor vehicle statutes and regulations of the applicable jurisdiction(s) of operation. Carrier warrants that it shall notify Robinson in the event of any suspension, cancellation, termination, or withdrawal of its operating authorities, in which event Robinson shall have the right to terminate this Contract immediately upon written notice to Carrier.

b.  Carrier further represents and warrants that it shall at all times maintain a U.S. DOT safety rating that is "satisfactory", "conditional", (subject to Robinson's policies as amended from time to time), or "unrated"; and if to the extent that Carrier performs services pursuant to this Contract within, or to or from Canada, comparably, Carrier shall maintain a Canadian "carrier safety rating" that is "satisfactory", "conditional" or "satisfactory-unaudited" in accordance with the Ontario Ministry of Transportation standards pursuant to the *Highway Traffic Act* and Regulations and/or any other Provincial or Territorial equivalent, which has jurisdiction over the Carriers operations. Carrier warrants that it will promptly notify Robinson if Carrier is assessed an "unsatisfactory" safety rating, or if any equipment is known to be or reported as defective or which is not in compliance with the applicable Federal, State, Provincial or Territorial statute or regulation pertaining to vehicle or highway safety and Robinson will suspend all service with Carrier and this Contract shall be terminated.

CHR ID T5235076

c. To the extent that Carrier performs services pursuant to this Contract within, or to or from Canada, Carrier warrants that it holds a valid registration with the Commercial Vehicle Operator's Registration (CVOR) System for transporting goods through Canada. Carrier shall notify Robinson immediately of any conviction or sanction against its CVOR rating.

d. To the extent that Carrier performs services pursuant to this Contract within, or to or from Canada, Carrier holds a valid license or certificate to operate an Extra-Provincial truck undertaking, and to engage in the Intra-Provincial truck transportation of goods or valid overweight permits pursuant to any applicable laws if necessary or as issued under the *Motor Vehicle Transport Act, 1987* or any *Highway Traffic Act* or equivalent as applicable to the jurisdiction of the trip/route.

e. To the extent that Carrier performs services pursuant to this Contract within, or to or from Canada, Carrier is authorized to transact bonded highway carrier operations in Canada, and warrants that it holds the applicable bonded highway carrier code as issued by the Canada Border Services Agency ("CBSA").

f. To the extent that Carrier performs services pursuant to this Contract within, or to or from Canada, Carrier has signed Partners in Protection memorandum of understanding with the CBSA and has been certified and/or validated by the United States Bureau of Customs and Border Protection ("CBP") as a participant in the Customs-Trade Partnership Against Terrorism.

g. To the extent that Carrier performs services pursuant to this Contract within, or to or from Canada, Carrier warrant that it is an approved carrier under the CBSA's Customs Self-Assessment program, and is a registered participant in the Free and Secure Trade ("FAST") program and that it holds a Standard Alpha Code number as issued by the National Motor Freight Association ("NMFTA").

## 6. DRIVERS AND EQUIPMENT

a. Carrier shall ensure that its drivers are properly trained and licensed, and are competent and capable of safely handling and transporting Robinson's shipments. Carrier agrees that drivers will be dispatched in accordance with the maximum available hours of service as provided in rules promulgated by the FMCSA while in the United States or as provided by any Canadian authority whose jurisdiction is within Carriers route/trip.

b. Carrier shall provide and maintain all equipment required for the services requested by Robinson and shall only use and provide equipment that is clean, in good operating condition and repair, in compliance with any and all Federal and/or State, Provincial/Territorial, Municipal statutes and regulations, and is suitable and properly configured to safely load, transport, and unload the shipments tendered by Robinson. Carrier shall ensure that all equipment and all loads are in compliance with the environmental standards of any and all jurisdictions on its route and must act in accordance with these environmental standards. Any deviation from prescribed environmental standards is contrary to Robinson's policy and the Carrier shall be solely and independently responsible for any consequence flowing from said deviation. All equipment provided for the transportation of food or food grade products will comply with the requirements of The Sanitary Food Transportation Act, or, to the extent that Carrier performs services pursuant to this Contract within, or to or from Canada, the Food and Drug Acts and any/all other applicable statutes and regulations, including, but not limited to the Ontario Food Safety and Quality Act, 2001, or any other jurisdiction's equivalent, and that none of the equipment so provided has been or will be used for the transportation of any waste of any kind, garbage, hazardous materials or any other commodity that might adulterate or contaminate food, food products or cosmetics.

c. Drop Trailer/Interchange. In the event that Carrier participates in a drop trailer arrangement for the benefit of any of Robinson's customers or vendors, Carrier agrees that it shall address

2/04/14 02:36PM RTS 9164277911 Page 4
ROBINSON_0115

CHR ID T5235076

all damage or liability issues directly with the responsible customer or vendor. Carrier agrees that Robinson shall only be responsible for the direct acts of its employees, and not for the actions of customers, lumpers, draymen, other carriers, or any other third party. If Carrier agrees to interchange equipment to another carrier or to use equipment owned by a third party, Carrier, will address any interchange agreement directly with that motor carrier or equipment owner.

       d.      Equipment Use/Commingling. Carrier agrees not to commingle or consolidate any freight tendered by Robinson with the freight of any of Carrier's other customers. With regard to the individual tenders accepted by Carrier from Robinson, Carrier's equipment shall be dedicated exclusively to the use of Robinson's tendered loads in accordance with each Confirmation. Carrier's violation of this exclusive use requirement shall result in, as a liquidated damage and not as a penalty, Carrier's forfeiting its right to be paid for the transportation services as contemplated by the Confirmation. Robinson shall also have the right to terminate this Contract immediately upon written notice to Carrier.

## 7. PERFORMANCE AND DELIVERY TIME

Carrier shall transport shipments to their specified destination without delay caused by anything in Carrier's control and with reasonable dispatch, unless a specified delivery date and/or time is communicated to it prior to the pick-up of any individual shipment, in which case delivery shall be performed in accordance with the communicated schedule.

## 8. COMPLIANCE WITH LAWS

Carrier agrees that all transportation services will be performed in full compliance with Federal, State, Provincial, Territorial, Municipal, local, and, to the extent applicable, international laws or regulations governing its operations (including but not limited to the statutes and regulations of any Provincial or Territorial Highway Traffic Act or equivalent, the Transportation of Dangerous Goods Act and regulations and the regulations of the Federal Department of Homeland Security ("DHS"), the Transportation Security Agency ("TSA"), as well as any legislation and related programs designed to protect transportation activities from terrorist attacks, such as the Customs – Trade Partnerships Against Terrorism and the Free and Secure Trade initiative. Carrier agrees to indemnify Robinson for any fines, costs, claims, liability or expenses that Robinson may incur and that arise out of violations of any applicable laws and regulations during Carrier's performance under this Contract.

## 9. SHIPMENT INSTRUCTIONS

At the time each shipment is received by Carrier from Robinson's customer, Carrier will request and obtain instructions concerning all handling, securing and freight protection requirements, including specifications noted on the bill of lading, on shipment instructions, or as otherwise may be provided. Carrier is responsible for insuring that all freight is properly blocked and braced for transportation pursuant to any applicable Canadian National Safety Standards, or other applicable standards, unless tendered to Carrier in a pre-loaded, sealed trailer, in which case Carrier shall note the seal numbers on the bill of lading or receipt. The goods being shipped shall be considered to be in apparent good order and condition, unless otherwise indicated by Carrier or receiver on the bill of lading.

## 10. ROBINSON'S COMPENSATION

Carrier shall not claim or demand, in whole or in part, broker's commissions earned by Robinson on shipments tendered under this Contract. Robinson shall not be required to disclose the amount of its broker's commission to Carrier, and Carrier expressly waives its right to receive and review information, including broker's commission information, pursuant to 49 CFR §371.3.

*K·S*

*CHRW Carrier Agreement Ver. No. 7.2 Feb 2009*      - 6 -      *Carrier Representative Initial:*

CHR ID T5235076

## 11. INDEPENDENT CONTRACTOR

Carrier is an independent contractor and shall exercise exclusive control, supervision, and direction over (i) the manner in which transportation services are provided; (ii) the persons engaged in providing transportation services; and, (iii) the equipment selected and used to provide transportation services. Carrier shall have full responsibility for the payment of local, state, and federal payroll taxes, workers compensation and other social security and related payment requirements with respect to all persons engaged in the performance of transportation services. This Contract does not create, nor shall it be deemed to create a partnership, joint venture, or agency relationship between Robinson and Carrier.

## 12. CARRIER'S CARGO LIABILITY AND CLAIMS

a.  Carrier shall have the sole and exclusive care, custody and control of the shipments tendered by Robinson from the time Carrier picks up a shipment until delivery to the consignee. Carrier shall be liable to Robinson for actual loss and damage to shipments, and for delayed deliveries, arising from Carrier's performance of or failure to perform the services required by this Contract; provided, however, that Carrier shall not be liable for loss, damage, or delay to shipments caused solely by an act of God, public enemy, acts of war, insurrection, riot, inherent vice of the Shipment, or the negligence of Robinson or its customer, in which case Carrier has the burden of proving applicability of the exception. Any seals applied to trailer are not to be broken or removed prior to delivery at destination without prior written consent from Robinson.

b.  Carrier shall be liable for the full, actual value of the shipments tendered by Robinson to Carrier. No released value rates, or other limitation of cargo liability, shall be valid or enforceable against Robinson or its customers unless expressly agreed to by Robinson in a signed writing separate from any bill of lading or other delivery receipt issued by Carrier.

c.  Robinson may file a claim for loss or damage to shipments delivered or not delivered. Within ninety (90) days of receiving a claim from Robinson for loss, damage, or delay, Carrier shall pay or deny the claim (in which case the reasons for denial shall be fully explained), or make a firm compromise offer.

d.  In the event branded or labeled goods are damaged, Robinson's customer may determine, in its sole discretion, whether the goods may be salvaged, and if salvageable, the value of such salvage. Any salvage receipts shall be deducted from the amount of Robinson's claim against Carrier. If Robinson's customer permits its goods to be salvaged and Carrier pays the full, actual value of the damaged goods Carrier may retain custody of the goods after removing all identifying marks or labels.

e.  To the extent that any of the terms of this contract are inconsistent with the *Highway Traffic Act*, R.S.O. 1990, c. H.8, as amended, and the Regulations thereto or similar provincial or territorial legislation having jurisdiction, and/or the provisions of any bill of lading, the terms of this Contract shall prevail.

## 13. INSURANCE

Unless greater insurance limits are required on a schedule to this Contract or by law, Carrier agrees to procure and maintain at its own expense the following insurance in at least the following amounts during the term of this Contract:

2/04/14 02:37PM RTS 9164277911 Page 6
ROBINSON_0117

CHR ID T5235076

    a.    Cargo Insurance: $25,000 per shipment or, to the extent that Carrier performs services pursuant to this Contract within, or to or from Canada, an amount sufficient to cover the loss or damage to the cargo carried, but in no instance less than $25,000 per shipment;
    b.    Automobile Liability Insurance: $750,000 USD per occurrence;
    c.    Worker's compensation: as required by law;
    d.    Any additional BMC 32 and MCS 90 Endorsements or requirements where required by law or regulation;

**(Note: possessing a General Liability insurance policy and insurance limits in excess of the minimums outlined above will result in greater freight opportunities for Carrier).**

Carrier shall furnish written evidence of its insurance coverage to Robinson upon request and shall advise Robinson of any change in its insurance coverage thirty (30) days prior to the effective date of such change. Carrier further agrees to procure and maintain any and all insurance required by federal, state, Provincial, Territorial, Municipal, local, or to the extent applicable, international laws. Carrier shall cause the required insurance to be procured naming Robinson as "additional insured" on any Public Liability, General Liability and/or Automobile liability policies, and as "loss payee" on the Cargo policy. Upon request of Robinson, Carrier shall furnish to Robinson written certificates obtained from each insurance carrier showing that the required insurance has been procured. Carrier's liability for cargo loss or damage described in Section 12 above and its indemnification described in Section 14 below will not be reduced or limited by the actual insurance policy limits that Carrier chooses to purchase.

## 14. CARRIER'S INDEMNIFICATION

Carrier shall indemnify, defend, and hold Robinson, its customers, consignors, and consignees, and their respective parent, subsidiaries, affiliates, employees, officers, directors and agents harmless from and against any and all losses, harm, injuries, damages, claims, costs, expenses, and liabilities (including reasonable legal fees) arising from, or in connection with services provided by Carrier, its employees, agents, and contractors, unless resulting directly from the negligence or willful act or omission of Robinson or its customers and their consignors or consignees and their respective parent, subsidiaries, affiliates, employees, officers, directors and agents.

## 15. BILLS OF LADING AND DELIVERY RECEIPTS

Carrier will issue and sign a standard, uniform straight bill of lading or other receipt ("Receipt") acceptable to Robinson and Robinson's customers upon acceptance of a shipment for transportation. If Carrier permits the shipper to prepare the bill of lading, Carrier warrants that it shall ensure that the bill of lading properly names Carrier as the "carrier" on the load prior to signing it, and shall strike through and correct any erroneous designation of any other person as "carrier" (including Robinson) on the bill of lading. Any terms and conditions written or printed on the Receipt shall have no effect against Robinson, unless specifically agreed to by Robinson in this Contract or in a separate signed writing apart from the Receipt. The Receipt issued or executed by Carrier shall be prima facie evidence of receipt of the shipment in good order and condition by Carrier unless otherwise noted on the face of said document. Carrier shall submit an original copy of the Receipt to Robinson evidencing delivery of the shipment unless otherwise instructed by Robinson, in which case Carrier shall retain custody of the Receipt and provide it to Robinson upon request. If Carrier fails to maintain and provide the Receipt, Carrier assumes all risk of loss resulting from the failure to prove good delivery.

2/04/14 02:38PM RTS 9164277911 Page 7
ROBINSON_0118

CHR ID T5235076

## 16. FACTORING

Carrier shall provide Robinson written notice of any assignment, factoring, or other transfer of its right to receive payments arising under this Contract thirty (30) days prior to such assignment, factoring, or other transfer taking legal effect. Such written notice shall include the name and address of assignee/transferee, date, date assignment is to begin, and terms of the assignment, and shall be considered delivered upon receipt of such written notice by Robinson. Carrier shall be allowed to have only one assignment, factoring or transfer legally effective at any one point in time, and no multiple assignments, factoring or transfers by the Carrier shall be permitted. Carrier shall indemnify Robinson against and hold Robinson harmless from any and all lawsuits, claims, actions, damages (including reasonable attorneys fees, obligations, liabilities and liens) arising or imposed in connection with the assignment or transfer of any account or right arising thereunder where the Carrier has not complied with the notification assignment requirements of this section. Carrier also releases and waives any right, claim or action against Robinson for amounts due and owing under this Contract where Carrier has not complied with the notice requirements of this section.

## 17. SUBCONTRACTORS

Carrier specifically agrees that it shall be the party solely responsible for operating the equipment necessary to transport commodities under this Contract and that it shall not, in any manner, sub-contract, broker or tender to any third party for transportation any freight tendered to Carrier pursuant to this Contract. In the event that Carrier shall employ any subcontractor or other person for the performance of all or any portion of the services required hereunder to be performed by Carrier, Carrier shall be and remain liable to Robinson under the terms of this Contract including, without limitation, liability for loss, damage or delay of any shipments, whether such loss, damage or delay occurred while such shipment was in the possession of Carrier or such subcontractor or other person. Carrier shall be solely and exclusively responsible to pay any charges of any subcontractor or other person and agrees to indemnify and defend Robinson and its customers from and against any claims made by any such subcontractor or other person in connection with its provision of services required to be performed by Carrier hereunder.

Notwithstanding the terms of this provision, if Carrier violates this Contract and co-brokers any freight tendered to Carrier pursuant to this Contract, Robinson may, in its sole discretion, do one or more of the following: (a) terminate this Contract and Robinson's relationship with Carrier; and/or (b) require the Carrier to immediately provide security (cash, bond or letter of credit) in a minimum amount of $50,000, or such greater amount required by Robinson, to secure Carrier's liability to carriers it engages. Carrier further acknowledges and agrees that Robinson may, in its sole discretion, withhold payment to Carrier and make payment directly to carriers it engages.

## 18. COMMUNICATIONS AND CONFIDENTIALITY

a. Carrier and Robinson shall endeavor to communicate by the most effective and efficient means to exchange information, including instructions, rates, equipment, shipment location, and other information helpful or necessary to achieve the intentions of the Parties herein. Such communications and information transmission presently includes telephone, telecopier, software, e-mail, internet, electronic data interchange, satellite, and information received from third parties (including affiliates of Robinson, outside billing companies and freight payment entities), but this is not intended to be limiting the manner of future communications as they develop.

b. All information furnished by one Party to the other in the course of performing work or rendering services under this Contract shall be deemed to be the confidential and proprietary information

CHR ID T5235076

of the disclosing Party and/or its customers. The Party receiving information agrees not to disclose any such information unless required to do so by order of court or other legally constituted tribunal, nor to use such information other than in performance of work and/or services under this Contract. Carrier agrees not to use Robinson or Robinson's customers' names for promotional or other purposes without prior written consent.

### 19. ASSIGNMENT

Neither party shall assign this Contract or any rights hereunder without the prior written consent of the other party, except that Robinson may assign this Contract to any of its parent, subsidiary or related companies, or to any surviving company in a merger or acquisition. Any assignment made pursuant to this paragraph shall be binding upon all assigns, heirs, and successors of the assigning party.

### 20. NOTICES

Except for regular business communications which may be transmitted through procedures established by agreement or acquiescence, all notices made hereunder shall be provided in writing and delivered by telecopier, certified mail, or overnight courier. Notices transmitted by telecopier shall be deemed received as of the date and time of confirmation printed by sender's machine. Notices transmitted by certified mail or overnight courier shall be deemed received as of the date and time signed for by recipient. Notices shall be addressed to the respective parties as set forth above.

### 21. FORCE MAJEURE

Neither Robinson nor Carrier shall be liable for any delay in the performance of their respective obligations under this Contract resulting from any force majeure, including, but not limited to, acts of God, acts of government or other civil or military authorities, acts of terror, war or riots. Whenever possible, in the event of a force majeure, the affected party shall promptly notify the other party in writing, stating the reasons for the inability to comply with the provisions of this Contract, and the expected duration of the force majeure.

### 22. NO LIEN

Carrier shall have no lien, and hereby expressly waives its right to any lien on any cargo, freight, or property of Robinson or any of its customers, consignors or consignees.

### 23. ENTIRE AGREEMENT

This Contract constitutes the entire agreement and understanding between the parties and supersedes any and all prior agreements and understanding, either oral or written.

### 24. EXECUTION

This Contract may be executed in one or more counterparts and each such counterpart shall, for all purposes, be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

### 25. FEES

In the event either party incurs attorney/lawyers fees, costs, or expenses in enforcing any of the provisions of this Contract, or in exercising any right or remedy arising out of any breach of this Contract by the



2/04/14 02:39PM RTS 9164277911 Page 9
ROBINSON_0120

CHR ID T5235076

other party, the prevailing party shall be entitled to receive attorney/lawyers fees, costs and expenses from the other party.

### 26. CHOICE OF LAW

The Parties agree that this Contract shall be governed by, construed and enforced in accordance with the laws of the State of Minnesota, or, to the extent that Carrier performs services pursuant to this Contract within, or to or from Canada, by the Province of Ontario and the Federal laws of Canada applicable within. The parties further agree that all disputes arising under this Contract may be submitted to the jurisdiction of the State or Federal Courts within the State or District of Minnesota or Illinois, or, to the extent that Carrier performs services pursuant to this Contract within, or to or from Canada, to the Province of Ontario or the Federal Courts of Canada.

The parties hereto have specifically requested that this agreement be drawn up in the English language only. Les parties aux présentes ont specifiquement requis que la présente Convention soit rédigée seulement en langue anglaise.

### 27. MODIFICATIONS TO CONTRACT

With the exception of additional operational requirement and/or shipping instructions set forth in the Confirmation and/or associated written instruction issued by Robinson, no modification of this Contract and waiver of any of its terms shall be valid or binding unless made in a writing duly executed by the authorized representatives of both parties.

### 28. SEVERABILITY

If any provision of this Contract held to be invalid under the laws of the Federal government, any State, Province, Territory, Municipality or any other jurisdiction having authority, such provision will be deemed to have no effect but all other provisions of this Contract shall remain in full force and effect.

### 29. WAIVER

The Parties have entered into this Contract pursuant to 49 U.S.C. § 14101(b) for the purpose of providing and receiving transportation services under the rates and conditions set forth in this contract. The Parties expressly waive any and all rights and remedies permitted to be waived under the Interstate Commerce Commission Termination Act, to the extent that such rights and remedies are inconsistent with any of the provisions of this Contract.

CHRW Carrier Agreement Ver. No. 7 ? Feb 2009     - 11 -     Carrier Representative Initial: KS

CHR ID T5235076

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date and year first written above.

**Kuwar Singh**
Carrier

**RT Service**
DBA Name

By: *[signature]*
(sign by an officer of the company)

By: KUWAR SINGH
(Print name of officer of the company)

Title: OWNER
(Owner/Officer of the company)
(EX: "Owner", "President"," Vice President", etc.)

Date: 02/04/14

C. H. Robinson Worldwide, Inc. and Its Affiliated Broker Subsidiaries

By: *[signature]*
(C.H. Robinson Worldwide, Inc. officer)

By: Mark Walker
(Please Print)

TITLE: Vice President, Transportation

DATE: 2/5/2014

2/04/14 02:39PM RTS 9164277911 Page 11
ROBINSON_0122