# EXHIBIT R

```
                                                                    1

1                  UNITED STATES DISTRICT COURT

2                      DISTRICT OF NEVADA

3    ALLEN M. MILLER,            )
                                 )
4            Plaintiff,          )
                                 )
5       vs.                      )   3:17-CV-00408-MMD-WCG
                                 )
6    C.H. ROBINSON WORLDWIDE,    )
     INC., RONEL R. SINGH,       )
7    RHEAS TRANS, INC., and      )
     KUWAR SINGH, d/b/a RT       )
8    SERVICE,                    )
                                 )
9            Defendants.         )

10                           - - -

11            VIDEO DEPOSITION OF LANE VANINGEN

12

13     DATE:             October 4, 2018 at 8:40 a.m.

14     PLACE:            Taylor Reporting Services, Inc.
                         21 East Garden Street
15                       Suite 210
                         Pensacola, Florida 32501
16
       REPORTER:         James M. Taylor
17                       Notary Public

18                           - - -
```

Page 34

1      circumstances, I mean there would be some circumstances they
2      would have it, not all circumstances, correct?
3           A.   I think that they could have some information
4      that would be part of a chameleon carrier determination.
5      Whether they're really in a position to take that and apply
6      the prudence necessary to arrive at their own separate
7      conclusion, maybe not.  But do I think that they would have
8      some information related to it, they could, absolutely.
9           Q.   So we'll to get this specifically in a minute,
10     whether they had that information.  But if C.H. Robinson
11     detects, and in a situation where they have the data and
12     they can and do detect that there's a chameleon carrier, at
13     that point do you believe, for them to be reasonably
14     careful, that they should take any action whatsoever or is
15     that something you would leave to a jury?
16          A.   I think I would tend to leave that to a jury.
17     I think my opinion just kind of in that area is, I have not
18     seen any broker, even very sophisticated brokers, that have
19     what I would consider a significant, well developed
20     chameleon carrier vetting process that would do anything
21     near what FMCSA would, applying their same protocol.  So
22     I -- you know, I realize some brokers have some vetting that
23     they do towards chameleon carriers.  I think Bruce Johnson
24     may have made some comments in his deposition in this case

Page 35

1      about that.  But I think I'm going to end up letting it to
2      the jury, and just describing what I think is normal and
3      describing what I've seen other brokers in the industry do.
4           Q.    You followed my train of thought, because I was
5      going to ask you about Bruce Johnson, but you answered it
6      before I had to ask it.  I guess his testimony stands for
7      itself.
8                 I guess with regard to the specifics in this
9      case, I would like to look at them for a moment.  Actually,
10     before we get to that, just looking a little further in your
11     report, you say that Singh's situation factually falls
12     outside of the chameleon carrier parameters.  So do you mean
13     this in the FMCSA sense, where you're saying there has to be
14     like violations with fines, or do you mean this in this kind
15     of common sense way we described it earlier?  Could you
16     elaborate?
17          A.    I think primarily I was approaching it from the
18     regulatory perspective, though I think it's totally
19     unrelated to the normal or customary actions in the
20     industry.  You know, I think I had said before in response
21     to one of your questions that I didn't think a chameleon
22     carrier using that term, was described -- was defined, but
23     there are clearly, you know, some characteristics that FMCSA
24     uses as they are making a chameleon carrier determination,

Page 63

1  not like that's been absent from, you know, the OP 1 vetting
2  process, you know, for the last -- I mean, extended period
3  of time, probably 20 years even.  It's just that those
4  things have been looked at and there's tweaks that have been
5  made and are coming, I think, soon to the system, still.
6        Q.   So you believe under the -- it's not under any
7  reg, but under the response -- the response to the GAO from
8  the FMCSA, that these criteria you've described, that you
9  don't believe RT Service would meet the definition of a
10  chameleon carrier.  That's your opinion?
11       A.   Right, right.  It's not a regulation.  It just
12  kind of gives you -- it shows you FMCSA's view on it because
13  it's their response to the GAO report.
14       Q.   Got it.  If we look at the general statutory
15  scheme that we just looked at.  Look at common law
16  negligence, something a jury would look at, you know, would
17  a broker that's being reasonably safe and careful, would
18  they do this.  Whether or not the common familial
19  relationship, the common, you know, management, whether
20  those would rise to a level where it was negligence, that's
21  something that you would leave to a jury, correct?
22       A.   Yeah.  I would say I'm just not comfortable
23  speaking to those legal terms or providing an opinion on
24  them at all.  I assume that's what the jury will do in this

Page 64

1      case.
2              Q.   Right.  And then the other thing that I think
3      we can agree to disagree about, but I was hoping we would
4      have agreement on, but I guess it's a bit much to ask, was I
5      was hoping you would say something like, look, this is a
6      chameleon carrier, it looks like pretty clear from
7      everything they did.  But I don't think C.H. Robinson has a
8      duty to find this or, you know, any obligation or blah,
9      blah, blah.  That's where I thought we might be.  But it
10     looks like -- let me go back to the three things.  You don't
11     think under the FMCSA you won't -- you know, you'd leave it
12     to jury under the common law.  But then clearly, what you're
13     saying is, even if C.H. Robinson knew this was a chameleon
14     carrier, you know, an affiliated carrier used to circumvent
15     the law, or reset its safety or something like that, even if
16     C.H. Robinson knew this was a chameleon carrier, it's your
17     opinion, in the industry, that they don't have a duty to do
18     anything about that --
19              MR. SULLIVAN:  Objection.  Compound.
20         Confusing.
21              MR. LEIZERMAN:  Well, since you say compound,
22         there probably was more than one question there.
23              Q.  (By Mr. Leizerman)  Let me say, do you believe
24     that -- assuming C.H. Robinson knows that there's a