UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ALLEN MILLER,

Plaintiff,

v.

COSTCO WHOLESALE CORP., *et al.*,

Defendants.

Case No. 3:17-cv-00408-MMD-CLB

ORDER

## I. SUMMARY

Plaintiff Allen Miller sued Defendant C.H. Robinson Worldwide, Inc. ("CHR") for negligently hiring an unfit motor carrier to transport a shipment, which led to an accident that severely injured Miller. (ECF No. 32 at 3, 7.) Before the Court is CHR's Motion for Summary Judgment (ECF No. 124 ("Motion")).[1] CHR requests summary judgment because Miller failed to establish, as a matter of law, that CHR breached its duty of care and that CHR's conduct was the proximate cause of the accident. (*Id*. at 6.) Because there are genuine issues of material fact as to both the breach and proximate cause issues, and as further explained below, the Court will deny the Motion.

## II. BACKGROUND[2]

CHR is a freight broker that contracts with motor carriers to transport shipments for clients. (ECF Nos. 32 at 7, 124 at 6.) CHR entered into a contract with RT Service ("RT"), an unrated motor carrier in 2014. (ECF Nos. 124 at 15, 129 at 10.) In 2016, CHR hired RT to deliver a shipment for Costco from Sacramento, California to Salt Lake City, Utah. (ECF Nos. 124 at 17-18, 129 at 13.) On December 8, 2016, Ronel Singh, on behalf

[1]Miller filed a response (ECF No. 129) and CHR filed a reply (ECF No. 133) to the Motion.

[2]The following facts are undisputed unless noted otherwise.

of RT, was driving a semi-truck eastbound on I-80 to deliver this shipment. (ECF No. 124 at 17.) Although road conditions were icy and snowy that day, Ronel Singh drove in an unsafe manner. (*Id*. at 17-18.) Ronel Singh alleged that he encountered some black ice and his truck overturned, blocking the westbound lanes. (ECF Nos. 124 at 17-18, 129 at 6.) Miller was driving westbound on I-80 and could not avoid the semi-truck. (ECF No. 129 at 13.) He became lodged and pinned under the tractor-trailer and suffered significant injuries, which rendered him a quadriplegic. (ECF Nos. 32 at 3, 129 at 13.)

Miller subsequently brought this lawsuit against CHR and various other Defendants. He specifically asserted two claims against CHR in the Amended Complaint—vicarious liability and negligent hiring. (ECF No. 32 at 6-7.) CHR previously filed a motion for judgment on the pleadings.[3] (ECF No. 59.) In his response to that, Miller agreed to dismiss the vicarious liability claim without prejudice.[4] (ECF No. 70 at 1-2.) CHR then filed the Motion, requesting summary judgment in its favor on Miller's remaining negligent hiring claim against CHR. (ECF No. 124 at 1.)

## III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits

[3]The Court previously granted CHR's motion for judgment on the pleadings because the Court found that Miller's common law negligence claim was preempted by the Federal Aviation and Administration Authorization Act. (ECF No. 84.) The Ninth Circuit reversed the Court's decision, and the order was vacated. (ECF No. 105.) CHR subsequently submitted a Petition for Writ of Certiorari to the U.S. Supreme Court regarding the Ninth Circuit's reversal and remand. (ECF No. 123.) That petition is currently pending before the U.S. Supreme Court, which asked the Acting Solicitor General to weigh in on the issue. (ECF No. 136.)

[4]CHR sought dismissal of Miller's vicarious liability claim because it was not an independent cause of action, but rather a theory of liability. (ECF No. 59 at 10-11.) There is no dispute that Miller consented to dismiss his vicarious liability claim without prejudice. (ECF No. 70 at 1-2.). However, Miller argues that he is not precluded from pursuing the vicarious liability theory under his negligence claim at trial. (ECF No. 129 at 28.) While vicarious liability as a claim was dismissed, the Court agrees that Miller is not precluded from asserting vicarious liability as a theory of liability as part of his remaining claim.

"show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id*. at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp*., 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co*., 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc*., 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp*., 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc*., 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am*., 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

///

///

## IV. DISCUSSION

CHR contends that summary judgment is appropriate because "Miller cannot establish, as a matter of law, that CHR violated the standard of care and/or that CHR's conduct was the proximate cause of the accident which injured Miller." (ECF No. 124 at 6.) The Court first addresses CHR's breach argument, then its proximate cause argument. Because genuine disputes of material fact remain as to whether CHR violated its duty of care and whether CHR's actions were the proximate cause of the accident, the Court will deny CHR's Motion.

### A. Breach of Duty

CHR argues that it did not violate its duty because the company performed a reasonable background check on RT, by ensuring that RT was registered by the Federal Motor Carrier Safety Administration ("FMCSA")[5] and had federally mandated insurance. (*Id*. at 22.) CHR also suggests that there is no evidence it actually knew that RT was a "chameleon carrier" of Rhea Trans ("Rhea").[6] (*Id*.) Miller counters that CHR ignored serious red flags that RT was a chameleon carrier and unfit for the job, and failed to further investigate the motor carrier. (ECF No. 129 at 20-21.) The Court agrees with Miller.

To prevail on a negligence claim under Nevada Law, the plaintiff must demonstrate "(1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009) (citation omitted). For negligent hiring, there is a "general duty on the employer to conduct a reasonable background check on a potential employee to ensure that the

---

[5]According to CHR, the FMCSA is an administrative agency that regulates interstate motor carriers, issues safety regulations for motor carriers, completes compliance reviews, and assigns safety ratings to carriers. (ECF No. 124 at 8-9.) *See* 49 C.F.R. § 385.1; 49 C.F.R. § 385.3.

[6]The U.S. Department of Transportation prohibits two or more motor carriers from "us[ing] common ownership, common management, common control, or common familial relationship to enable any or all such motor carriers to avoid compliance, or mask or otherwise conceal non-compliance, or a history of non-compliance, with statutory or regulatory requirements." 49 C.F.R. § 385.1005. The parties refer to these carriers as "chameleon carriers," a term the Court adopts for the purposes of consistency and clarity. (ECF Nos. 124 at 12, 129 at 8-9.)

employee is fit for the position." *Burnett v. C.B.A. Sec. Serv.*, 820 P.2d 750, 752 (Nev. 1991) (citation omitted). The employer violates this duty "when it hires an employee even though the employer knew, or should have known, of that employee's dangerous propensities." *Hall v. SSF, Inc.*, 930 P.2d 94, 98 (Nev. 1996) (citation omitted).

The Court is persuaded that a reasonable juror could find that several "red flags"[7] should have triggered CHR to further investigate RT. *See Anderson*, 477 U.S. at 250-51. First, Miller points to CHR's admission that it previously contracted with Rhea in 2013 and did not remove Rhea from its system until 2017. (ECF Nos. 129 at 7, 130-2 at 3.) Rhea was a motor carrier owned by Ronel Singh, the driver in the accident, that had its license permanently revoked[8] by the FMCSA in 2014 due to multiple, egregious violations. (ECF No. 129 at 7-8.) Ronel Singh was listed as Rhea's owner in its 2013 contract with CHR. (ECF No. 125-1 at 180.) According to Miller, Ronel Singh subsequently formed RT and applied for FMCSA registration under his father's name, "Kuwar." (ECF Nos. 129 at 8, 130-6 at 2-3.) Ronel Singh and his father have the same last name, and Kuwar Singh was listed as RT's owner in its 2014 contract with CHR. (ECF Nos. 125-1 at 165, 129 at 8.) Miller suggests that CHR's long history with Rhea and the identical last names should have indicated to CHR that RT was a chameleon carrier of Rhea, and unfit to be hired. (ECF No. 129 at 7-8, 21.) This is because FMCSA applicants with chameleon characteristics are *three times* more likely to be involved in severe crashes than those without chameleon characteristics, since they "reincarnate or re-brand with the same

---

[7]Miller also cites to findings by expert witness Steven Belyus that CHR ignored red flags within RT's own record prior to the accident. (ECF No. 129 at 11-15.) CHR objects to the Court's consideration of Belyus' affidavit for this Motion since Miller previously confirmed that he would not be calling Belyus to testify about causation at trial. (ECF No. 133 at 16.) The Court need not decide this issue at this stage because the Court does not rely on Belyus' affidavit in its decision and Miller has presented other evidence to show that genuine issues of material fact exist.

[8]According to Miller, the FMCSA revoked Rhea's registration several times in 2013 and 2014, and never reinstated the registration due to Rhea's "failure to maintain the minimum required insurance." (ECF No. 129 at 7.) Rhea was also cited for driver-related, vehicle-related, hours-of-service, and logbook violations. (*Id*. at 7-8.)

ownership, assets, or drivers but do not change their culture or unsafe practices."[9] (*Id*. at 9.) Moreover, chameleon or reincarnated carriers are prohibited by FMCSA regulations. *See* 49 CFR § 385.1005.

Next, Miller contends that CHR should have known that RT was a chameleon carrier because the phone numbers and email addresses for RT and Rhea were the same in CHR's database.[10] (ECF Nos. 129 at 10, 21, 138-1 at 2-4.) Both Ronel and Kuwar Singh were also listed as points of contact in CHR's sign-up form for RT. (ECF Nos. 129 at 10, 130-9 at 2.) Notably, the time stamp on the sign-up form was February 3, 2014—*before* the contract date between RT and CHR. (ECF Nos. 125-1 at 165, 129 at 10, 130-9 at 2.) CHR admits that the company has an internal system that checks for chameleon carriers by looking at a new carrier's "address, telephone and contract signer information" to identify previous carriers with same information. (ECF No. 124 at 13-14.) If the system finds a match, CHR's "carrier service group investigates the connection and whether the other entity was shut down for safety reasons, had its registration revoked, or otherwise had issues with the FMCSA . . . [i]f any of those reasons are found, CHR will not do business with the new motor carrier." (*Id*. at 14.) Despite the matching information

---

[9]Miller points to data about chameleon carriers from the U.S. Government Accountability Office. *See Motor Carrier Safety: New Applicant Reviews Should Expand to Identify Freight Carriers Evading Detection*, U.S. Government Accountability Office, https://www.gao.gov/products/gao-12-364 (last visited Feb. 16, 2022). In CHR's reply, it broadly asks the Court to exclude "improper documents and websites" from its consideration because Miller failed to provide "foundation, authentication, nor even a request for the Court to take judicial notice of the same." (ECF No. 133 at 7.) CHR does not specify which websites it takes issue with. (*Id*.) However, to the extent CHR objects to the Court's consideration of the Accountability Office's website and data, Federal Rule of Evidence 201 permits the Court to take judicial notice on its own of a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Here, the chameleon carrier data is highly relevant to Miller's argument and has been generated by the Accountability Office, using FMCSA data. The Court will therefore take judicial notice of the aforementioned source and data.

[10]CHR argues that RT and Rhea were categorized as "related parties" three months *after* the accident, and that the physical addresses for the carriers were different in the system. (ECF No. 133 at 12-13.) Screenshots from CHR's database confirm that the "Relationship Note" between RT and Rhea was added in March 2017. (ECF No. 138 at 7.) However, this does not negate the contention that Rhea and RT's phone numbers and email addresses were identical in CHR's system *prior to* the December 2016 accident and the March 2017 update. (*Id*.)

between RT and Rhea, and Ronel Singh being listed as a point of contact for RT, CHR's carrier services group allegedly never conducted further investigation into RT. (ECF No. 129 at 10.) A reasonable factfinder could conclude that CHR's failure to investigate RT, despite these blatant warning signs, constitutes breach because it violated CHR's own protocols and was not a reasonable background check. *See Hall*, 930 P.2d at 98; *Anderson*, 477 U.S. at 248-49.

In sum, the plethora of evidence Miller provides creates a genuine dispute of material fact for the breach issue and challenges CHR's assertion that there is *no* evidence CHR actually knew RT was a chameleon carrier at the time of hiring. (ECF No. 124 at 7, 23.) *See Anderson*, 477 U.S. at 256. However, even if CHR lacked actual knowledge, a rational trier of fact could find that CHR *should have* made the connection between RT and Rhea and investigated further, especially given Ronel and Kuwar's identical last names, CHR's past relationship with Rhea, Ronel Singh being listed as the point of contact for RT, the identical phone numbers and email addresses for RT and Rhea, and CHR's own protocols for chameleon carriers. *See Hall*, 930 P.2d at 98 (noting that breach occurs even when the employer *should have* known of the employee's dangerous propensities) (emphasis added); *see also Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1181 (Nev. 1996) (finding there was a genuine dispute of material fact for negligent hiring because the plaintiff produced evidence that the hired employee had been fired from past jobs due to his violent behavior, had a criminal record, and had lied on his application).

Thus, drawing all inferences in the light most favorable to Miller, the Court finds that there are genuine issues of material fact as to whether CHR breached its duty of care. *See Kaiser Cement Corp.*, 793 F.2d at 1103; *Hall*, 930 P.2d at 98. Moreover, denial of summary judgment is justified because the issue of breach and whether a party's conduct is reasonable are generally questions of fact reserved for the jury. *See Pennington v. Ed's Tire Serv., Inc.*, 130 Nev. 1228 (2014); *Lee v. GNLV Corp.*, 22 P.3d 209, 212 (Nev. 2001).


**B. Proximate Cause**

CHR argues that Miller cannot establish proximate cause because there is no evidence CHR knew of the relationship between Rhea and RT, and because CHR had no control over which driver and vehicle were selected to deliver the shipment. (ECF No. 124 at 23, 26.) CHR also suggests that speeding by both parties, rather than the vehicle's brake issues and RT's prior hours of service violations, was the cause of the accident. (*Id*. at 26-27.) The Court disagrees that these arguments are sufficient to warrant summary judgment in CHR's favor.

A reasonable factfinder could conclude that the accident was a foreseeable harm of CHR's inadequate and unreasonable screening measures, and that CHR's negligence created an undue risk to others by placing a dangerous motor carrier on the road. *See Anderson*, 477 U.S. at 250-51 (noting that summary judgment is inappropriate where reasonable minds could differ on the material facts at issue); *see also Taylor v. Silva*, 615 P.2d 970, 971 (Nev. 1980) (noting that "[a] negligent defendant is responsible for all foreseeable consequences proximately caused by his or her negligent act") (citation omitted). A rational trier of fact could also find that CHR's failure to investigate RT, despite multiple warning signs, was part of the "natural and continuous sequence, unbroken by any efficient intervening cause" that produced the accident. *See Taylor*, 615 P.2d at 971 (citations omitted); *see also Mahan v. Hafen*, 351 P.2d 617, 620 (Nev. 1960).

Moreover, summary judgment is inappropriate because proximate cause generally concerns issues of fact that should be reserved for the jury. *See Nehls v. Leonard*, 630 P.2d 258, 260 (Nev. 1981) (citations omitted); *see also Flaherty v. Kelly*, 129 Nev. 1114 (2013) (noting that the Nevada Supreme Court is "reluctant to affirm summary judgment [in negligence cases] . . . because, generally, the question of whether a defendant was negligent in a particular situation is a question of fact for the jury to resolve") (citation omitted). Thus, drawing all inferences in the light most favorable to Miller, the Court finds that there are genuine disputes of material fact as to the proximate cause issue that

should be reserved for trial. *See Kaiser Cement Corp.*, 793 F.2d at 1103; *Anderson*, 477 U.S. at 256.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that CHR's motion for summary judgment (ECF No. 124) is denied.

DATED THIS 22nd Day of February 2022.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE